**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEMETRIUS BAILEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-0762** |
| **v.** | : | **(JUDGE MANNION)** |
| **JEN DIGBY,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

**I. BACKGROUND**

On May 8, 2020, the above captioned action was initiated by Plaintiffs Robert Jones, William Walker, Demetrius Bailey, Richard Dennis, James Jones, Darryl Gardner, Dwayne Gooden, and Cameron Lovett. (Doc. 1, complaint). By Order dated July 23, 2020, all Plaintiffs, except Demetrius Bailey were terminated from the above captioned action and the action was permitted to proceed as to only Demetrius Bailey. (Doc. 12).

By Order dated December 28, 2020, Bailey was permitted to file an amended complaint on or before January 7, 2021. (Doc. 28). The Order permitted the filing of an amended complaint by only Demetrius Bailey. Id. All other Plaintiffs were dismissed from the action.

On December 30, 2020, Bailey filed an amended complaint. (Doc. 35). The named Defendants in the amended complaint are Jen Digby, Sgt. Mull, Sgt. Green, Security Lt. Burkeholt, CO Lebo and Sgt. Lengel. Id. In his amended complaint, Plaintiff states that he "has been complaining about the problems on N-Block where Defendant Unit Manager Jen Digby is supposedly running the block and Bailey notify Defendant Harry in this case about the complaints and they been ignored and I notify the Court but Bailey continues to be retaliated against by staff on the block due to filing this complaint and illegally sexually abusing and harassing Bailey while he using the bathroom and making racism comments and issuing retaliatory fabricated misconducts and putting his life in danger by staff trying to get into a confrontation to physically assault him and psychology abuse him in the RHU." Id. Plaintiff further alleges that "Sgt. Mull keeps asking Bailey to watch him go to the bathroom so first plaintiff verbally complained about his behavior to Defendant Digby the Unit Manager of the Block, and she told me to deal with it." Id. Finally, Plaintiff claims that he was issued three "retaliatory-fabricated misconduct[s]" one on November 21, 2020 for covering his door while going to the bathroom; one on November 25, 2020 for using the "showers upstairs" which Plaintiff alleges was per orders of Defendant Digby in retaliation for filing a lawsuit against her; and one issued

on December 18, 2020, where "per order of Defendant Digby she order Defendant Lengel to issue a retaliatory-fabricated misconduct #D271521 and she wrote misconduct #D271519 against plaintiffs for Bailey filing a lawsuit against her in which Tacker has a First and Equal Protection Right to receive a food package from a family friend." Id.

For relief, Plaintiff seeks compensatory and punitive damages as well as a "separation from Defendant Digby." Id.

Presently before the Court is the Defendants' motion for summary judgment. (Doc. 75). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.   SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### III.  STATEMENT OF UNDISPUTED FACTS

The DOC has an administrative remedy system in place that is relevant to the instant motion, DC-ADM 804, which governs the filing of administrative grievances and associated appeals.

Under DC-ADM 804, a prisoner must first submit a timely written grievance for review by the Superintendent or regional grievance coordinator within fifteen days from the date of the incident. See (Doc. 77-1 at 8-42, DC-ADM 804). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. If the inmate wishes to receive compensation

or "other legal relief normally available from a court" as a remedy for his grievance, he "must request the specific relief sought in his/her initial grievance." Id. A response should be received within ten business days. Id. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. Id. Again, a response should be received within ten working days. Id. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and the inmate should receive a final determination within thirty days. To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process." Id.

A review of the SOIGA files from November 1, 2020 through January 31, 2021, reveal that there were no grievances filed to final review by Plaintiff, Demetrius Bailey. (Doc. 77-1, Affidavit of Keri Moore, Assistant Chief Grievance Review Officer for SOIGA). In fact, a copy of Plaintiff's grievance history from August, 2020 through July, 2021, reveals that Plaintiff did not file any grievances from August 28, 2020 through March 1, 2021. (Doc. 77-2 at 4, Grievance History).

## IV. DISCUSSION

### A. Exhaustion

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates

who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was

prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievance procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

The Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the

books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit has joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). Once defendants

present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that administrative remedies were unavailable. Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." Downey, v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020). District courts may not "excuse [a prisoner's] failure to exhaust." Ross, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception). Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhius v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

Defendants have properly raised the matter of exhaustion of administrative remedies with respect to Plaintiff's claims. They argue that Plaintiff's amended complaint, filed on December 30, 2020, complains of three alleged retaliatory misconducts, issued on November 21, 2020, November 25, 2020, and December 18, 2020. (Doc. 78 at 9). However, Plaintiff has failed to file or appeal any grievance relating to retaliation, to final review before the Chief of the Secretary's Office of Inmate Grievances and Appeals. Id.

In an attempt to oppose Defendants' argument, Plaintiff submits copies of the November 25 and December 18, 2020 misconducts, in which he pled guilty to the charges therein, and a series of other misconducts he received and grievances he filed between February 2020 and June 2020 and after March 2021.[1] (Doc. 93-10). All of which either pre-date or post-date the events complaint of in Plaintiff's amended complaint. Plaintiff does not submit any grievances pertaining to the retaliation allegations contained in his amended complaint. In fact, Plaintiff does not refute the defense that he failed to properly exhaust the claims before the Court. Instead, he attempts to change the facts of his amended complaint, by resurrecting abandoned claims and attempting to raise new claims. Id. Plaintiff, an avid litigator in this Court, is reminded that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988) (quoting Car

---

[1] One of the many exhibits submitted by Plaintiff in opposition to Defendants' motion is a copy of a Grievance Restriction Notice, in which Plaintiff was placed on grievance restriction from April 14, 2020 through June 14, 2020 and only permitted to file one grievance per 15 working days. (Doc. 93-8 at 1). Such restriction expired on June 14, 2020 months before Plaintiff received the challenged misconducts herein. Thus, any argument that Plaintiff may make regarding failure to exhaust due to being on grievance restriction fails.

Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf.

Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not

consider after-the-fact allegations in determining the sufficiency of [a]

complaint under Rules 9(b) and 12(b)(6)."). If Plaintiff wishes to bring new

and different claims now, he should do so through a new lawsuit, but he may

not change the fundamental character of his amended complaint at this late

date by arguing new and different claims in response to this motion for

summary judgment. As such, the claims raised in Plaintiff's amended

complaint remain unexhausted. The PLRA requires full and proper

exhaustion prior to the initiation of Plaintiff's claims in federal court, and this

Court cannot excuse compliance with those requirements. Moreover,

Plaintiff has not presented any evidence to suggest that the administrative

remedy procedure was rendered unavailable to him. Thus, Plaintiff has failed

to exhaust his administrative remedies available to him under DC-ADM 804.

Finally, under DC-ADM 801, an inmate who has been found guilty of a

misconduct charge may appeal to the Program Review Committee ("PRC")

for an initial review of the guilty finding within fifteen days of the hearing. See

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%2

0Inmate%20Discipline. The inmate's appeal must include a brief statement

of the facts relevant to the appeal and the issues complained of on appeal.

Id. If the inmate is unsuccessful at the PRC level, he must appeal the PRC decision to the Superintendent/designee within seven calendar days. Id. The Superintendent is required to review the appeal and forward a decision to the inmate within seven working days of the appeal being filed. Id. If the inmate is unsuccessful before the Superintendent, he must appeal to the DOC's Chief Hearing Examiner's Officer within seven days. Id. An inmate must appeal the disciplinary decision through all three stages of appeal to properly exhaust his administrative remedies. Id.

The summary judgment evidence reflects that although Bailey claims that the three misconducts issued on November 21, November 25 and December 18, 2020 were issued for retaliatory purposes, there is no record evidence that Plaintiff appealed these misconducts as required by DC-ADM 801. See (Doc. 93-15 at 2, 93-16 at 4). An inmate is required to partake in the administrative process prior to challenging any aspect of the misconduct in federal court. Failure to appeal a finding of misconduct to final review constitutes a failure to exhaust administrative remedies regarding that misconduct. Grisby v. McBeth, No. 1:17-cv-00243, 2018 WL 1518566, *3 (M.D.Pa. Mar. 28, 2018) (citing Hagan v. Chambers, No. 1:08-cv-1766, 2010 WL 4812973, at *6 (M.D. Pa. Nov. 19, 2010)). Here, once again, the record evidence demonstrates that no appeal was filed to the Chief Hearing

Examiner. Thus, Plaintiff failed to exhaust his administrative remedies under DC-ADM 801 with respect to his misconduct charges because he failed to properly file a final appeal to the Chief Hearing Examiner. Plaintiff does not refute this argument with any record evidence or argue that the administrative remedy system was made unavailable at any point. Again, his brief in opposition does not even address exhaustion. Thus, it appears that Plaintiff has failed to exhaust administrative remedies prior to filing the above captioned action. The Court, therefore, will grant summary judgment in favor of the Defendants on the basis that Plaintiff failed to properly exhaust his administrative remedies.

Regardless of exhaustion, the Court finds that Plaintiff's claims fail on their merits.

**B. Merits**

**1. Sexual Harassment Claim**

Plaintiff alleges that Defendant Mull has been "sexually abusing and harassing Bailey for taking a 'shit' and writing retaliatory-fabricated misconducts for complaining to his supervisor." (Doc. 35 at 8). Specifically, Plaintiff states that "every time Defendant Mull works the block he keeps wanting to watch [Plaintiff] take a 'shit' due to [his] medical problems where [he] take[s] Linzess, Mirolax, Colace, Protonix that forces Bailey to go to the

bathroom after colon surgery." Id. Plaintiff claims that he "verbally complained about his behavior to Defendant Digby the Unit Manager of the Block and she told [Plaintiff] to deal with it." Id. Plaintiff believes that "on 11-21-20, Defendant Mull issued a retaliatory-fabricated misconduct #D210418[2] for covering his door to take a 'shit' after complaining to his supervisor and like every prisoner on the block covers their door when using the bathroom inmates similarly situated on N-Block so Bailey filed a Prison Rape

---

[2] Misconduct #D210418 reads as follows:

   On the above date and time this SGT was conducting the first round of the day on the November block and upon arriving at cell A1-26 which houses inmate Bailey (CP7819) who is Z-Coded, the door was completely covered again. This is an ongoing problem with this inmate who has been counseled by this SGT on numerous occasions when assigned to November block. Inmate Bailey continues to cover his door every morning and yell out the door that he is in the cell and fine. Inmate Bailey has been made aware that this is against the rules and not acceptable. Quarters card attached for reference.

(Doc. 93-15 at 1).

- 17 -

Elimination Act complaint[3] against Sgt. Mull but was denied[4], DC-ADM 008."

Id.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Sexual abuse of inmates or detainees may violate the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution").

---

[3] Plaintiff's PREA complaint reads as follows:

On 11-21-20 SGT Mull keeps sexually harassing Plaintiff Bailey on N-Block every time he works over here by stating "I like to watch you take a shit so make sure you remove your cover from your door when I am working." This is becoming too much for me when I have a serious medical need that requires me to use the bathroom for at least three hours straight and to protect female staff walking around I cover my door, so I don't expose myself to them, but I am not going to continue receiving sexual comments from SGT. Mull when I am taking a shit and witnesses can verify this every morning I am using the bathroom and the medication that I am on from the outside specialist dictates how I use the bathroom and this been going on with me for the last (9) months and regular staff has already been made aware but this is being done out of retaliation for filing lawsuit against staff and I request a full investigation and separation from SGT. Mull cause I fear for my life and it's a violation of my Constitutional rights First, Eight Amendments and Equal Protection cause no other prisoner in their cell is being sexually harass but me when using the bathroom.
(Doc. 93-16 at 2).

[4] On November 25, 2020, Plaintiff's PREA complaint was denied as "the allegation was reviewed and determined to not meet the definition of PREA" as Plaintiff is "not permitted to cover window." (Doc. 93-16 at 3).

In the Eighth Amendment context, a plaintiff must satisfy both an objective and subjective prong akin to excessive force claims. Ricks, 891 F.3d at 475. In that regard, the conduct in question must be "objectively, sufficiently intolerable and cruel, capable of causing harm and the official must have a culpable state of mind." Id. "Regarding the subjective prong, [the Court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations omitted).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, Civ. A. No. 17-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, Civ. A. No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); Washington v. Gilmore, Civ. A. No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct

physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

Plaintiff's amended complaint fails to state a claim for sexual abuse because it does not allege any direct physical contact with Defendant Mull or that Mull's conduct was even sexual in nature. Plaintiff does not allege that Mull touched him in any way, but only states that Mull allegedly watched him "take a 'shit." (Doc. 35 at 7). Without more, these facts are insufficient to meet the objective prong of an Eighth Amendment sexual abuse claim. Accord Ricks, 891 F.3d at 477 (noting that "objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline"). Thus, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment Sexual Abuse Claim.

### 2. **Verbal Harassment**

It has been recognized that the use of words generally cannot constitute a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Maclean v. Secor, 876 F.Supp. 695, 698–99 (E.D.Pa. 1995); Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D.Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under §1983."). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D.Va. 1973); see also Balliet v. Whitmire, 626 F.Supp. 219, 228–29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation ..."), aff'd, 800 F.2d 1130 (3d Cir. 1986). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, or under the Fifth Amendment's substantive due process clause. See Prisoners' Legal Ass'n, 822 F.Supp. at 189; Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat

beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. Bieros v. Nicola, 860 F.Supp. 226, 233 (E.D.Pa. 1994); see also Prisoners' Legal Ass'n, 822 F.Supp. at 189; Murray, 809 F.Supp. at 384.

Therefore, based on the foregoing, any claim of verbal harassment made by Plaintiff fails to rise to the level of a viable civil rights claim. See Hart v. Whalen, 2008 WL 4107651, *10 (M.D.Pa. 2008).

### 3. **Retaliation Claim**

Plaintiff alleges that he "continues to be retaliated against by staff on the block due to filing this complaint." (Doc. 35 at 7). Specifically, Plaintiff claims that he has been issued retaliatory misconducts on November 21, 25 and December 18, 2020. Id.

An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v.

Horn, 241 F.3d 330, 333 (3d Cir. 2002). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n.10 (3d Cir. 1996). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons

reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

It is well-settled that inmates engage in protected activity when they file grievances and lawsuits. See Anderson v. Davila, 125 F.3d 148, 161-62 (3d Cir. 1997). Thus, the Court must consider whether the alleged adverse actions set forth above are actionable under §1983.

Plaintiff claims that Defendants retaliated against him for filing the instant civil rights action, which was filed on May 8, 2020. The alleged retaliatory conduct occurred on November 21, 25 and December 18, 2020. "To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Alex v. Wetzel, 2014 WL 690610, at *4 (M.D. Pa. Feb. 24, 2014) (citing Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." Lawson v. Crowther, 2018 WL 6524380, at *4 (W.D. Pa. Oct. 30, 2018), report and

recommendation adopted, 2018 WL 6523185 (W.D. Pa. Dec. 12, 2018) (citations omitted). See also Fischer v. Transue, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (temporal proximity of three weeks insufficient to establish causation); Mar v. City of McKeesport, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (three months); Killen v. N.W. Human Servs., Inc., 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (seventeen days). Plaintiff claims that Defendants issued retaliatory misconducts against him some six months after the filing of the instant action on May 8, 2020. Thus, the temporal distance does not suggest a causal link.

Furthermore, Plaintiff pled guilty to two of the misconducts and was found guilty on the third, (see doc. 93-16), which negates his retaliation claim. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings." Nifas v. Beard, 374 Fed. Appx. 241, 244 (3d Cir. 2010) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Here, the record includes evidence to support the misconduct, including admissions by Bailey. (See Doc. 93-16). Because a finding of some evidence to support a misconduct citation trumps a retaliation claim involving prison discipline,

Bailey's admissions that he committed the acts of misconduct bars him from citing the discipline as some form of retaliation. See, e.g., Rosa-Diaz, v. Rivello, 2020 WL 6481539, at *11 (M.D. Pa. July 10, 2020), report and recommendation adopted Rosa-Diaz, v. Rivello, 2020 WL 6449331 (M.D. Pa. Nov. 3, 2020). Thus, based on the above analysis, Plaintiff's allegations do not raise an inference that Defendants' decision to charge Plaintiff with misconduct was retaliatory. The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's First Amendment retaliation claim.

## V. CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' motion for summary judgment.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 28, 2022**
20-0762-01